August 12, 1977

## 78-81 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Executive Order No. 11222—Standards of Conduct— Government Officials Writing Articles and Books

You have asked our advice regarding the legality and propriety of Presidential appointees' writing articles and books for publication, either with or without compensation, including writing that is related to the official's area of responsibility as well as writing that is not.

For the most part, these types of activities are governed by Executive Order No. 11222 of May 8, 1965 (30 F. R. 6469) and Civil Service Commission and agency regulations implementing the Executive order, rather than by the conflict of interest laws with which the Office of Legal Counsel is concerned. Because each appointee is subject to the standard of conduct regulations of his agency, it would be advisable for the appointee to consult those regulations and to contact the agency's ethics counselor[1] if a question arises concerning the propriety of writing or lecturing in a given instance. In fact, several agencies require their employees to obtain approval before engaging in outside activities concerning their official work. *See, e.g.,* 22 CFR 10.735-204(c) (State); 29 CFR 0.735-13 (Labor); 31 CFR 0.735-38 (Treasury); 45 CFR 73.735-403 (f)(HEW). However, we can offer the following general observations on the issues involved.

### I. Compensated Activities

Section 202 of Executive Order No. 11222 establishes the outlines of Executive branch policy on outside activities, including writing:

An employee shall not engage in any outside employment,

---

[1]Under Civil Service Commission regulations, each agency head designates a top-ranking employee of the agency to serve as ethics counselor whose responsibility is to give "authoritative advice and guidance" on questions of conflicts of interest and related matters covered by Part 735 of the Commission's regulations. 5 CFR 735.105. The Ethics Counsel of the Civil Service Commission in turn advises agency ethics counselors on questions of interpretation arising under Executive Order No. 11222 and implementing Civil Service Commission regulations; and the Office of Legal Counsel advises agencies on questions arising under conflict of interest laws.

including teaching, lecturing, or writing, which might result in a conflict, or an apparent conflict, between the private interests of the employee and his official government duties and responsibilities, although such teaching, lecturing, and writing by employees are generally to be encouraged so long as the laws, the provisions of this order, and Civil Service Commission and agency regulations covering conflict of interest and outside employment are observed.

Under applicable laws and regulations, a question would ordinarily be raised whenever a Presidential appointee is to receive compensation for the publication of an article or book that deals with his official duties.

In the most extreme situation, where an article (or speech later reduced to article form) was prepared or delivered as part of the individual's official duties, receipt of nongovernmental compensation for the delivery or publication would violate 18 U.S.C. § 209(a), which (with exceptions not pertinent here) prohibits the receipt of any contribution to or supplementation of salary from outside sources as compensation for an individual's services to the Government.

In addition, Civil Service Commission regulations expressly prohibit the receipt of compensation by *some* Presidential appointees for certain activities that are not actually part of the person's official duties:

[A]n employee who is a Presidential appointee covered by section 401(a) of [Executive Order 11222] shall not receive compensation or anything of monetary value for any consultation, lecture, discussion, writing, or appearance the subject matter of which is devoted substantially to the responsibilities, programs, or operations of his agency, or which draws substantially on official data or ideas which have not become part of the body of public information. 5 CFR 735.203(c).

As the regulation makes clear, it applies only to Presidential appointees covered by section 401(a) of the Executive order, which covers only: (1) agency heads; (2) full-time members of committees, boards, and commissions appointed by the President; and (3) Presidential appointees in the Executive Office of the President who are not subordinate to the head of an agency in that office. Thus, in an Executive department, the Civil Service Commission regulation would apply only to the head of the department. However, several departments, in their own regulations, have extended this prohibition to cover all agency employees.[2]

---

[2] *See, e.g.,* 15 CFR 0.735-12(c)(2) (Commerce); 28 CFR 45.735-12(b) (Justice). *See also* 7 CFR 0.735-13(a)(4) (Agriculture). The regulations of other Executive departments parallel the Civil Service Commission regulation by applying this limitation only to Presidential appointees covered by section 401(a) of the Executive order. *See* 32 CFR 40.12(e), as amended, 42 F.R. 3649 (Defense); 45 CFR 73.735-401(e) (HEW); 24 CFR 0.735.204(e)(1) (HUD); 43 CFR 20.735-33(d) (Interior); 29 CFR 0.735 11(a) (Labor); 22 CFR 10.735-204(c) (State); 49 CFR 99.735-11(d) as amended, 42 Fed. Reg. 3120 (Transportation); 31 CFR 0.735-39(b) (Treasury).

Where an article or book does not contain a significant amount of nonpublic governmental information, the scope of the prohibition in the Civil Service Commission regulation and identical agency regulations in particular situations depends on the meaning of the phrase "devoted substantially to the responsibilities, programs, or operations of his agency." The phrase can be given a narrow interpretation barring the receipt of compensation only where the article or book relates to existing statutory responsibilities and programs of the agency. Alternatively, the phrase "responsibilities . . . of his agency" can be read to encompass the general subject matter or sector of the economy or society with which the individual's agency is concerned, even though the writing does not specifically relate to the functions of the agency. A search of our conflict of interest files reveals that we have given the quoted phrase in the comparable Department of Justice regulation the broader of the two readings mentioned above as it applies to top-level Department officials.

In the only memorandum we have been able to locate involving a Presidential appointee, this office advised a former Attorney General that he could accept compensation for the publication of a collection of his essays so long as the subject matter was not substantially related to areas of Department of Justice activity. We took the position that the purpose of the regulation was to preclude an employee of the Department from profiting from publication where it was likely to be attractive to the public because it represented views of a Department official on subject matter within the responsibilities of the Department. Thus, the former Attorney General was advised that he could receive compensation for publication of general jurisprudential essays concerning legal education or ethics, but not those relating to antitrust or civil rights laws. The same interpretation of the regulation underlay this office's conclusion in 1972 that a member of the Board of Parole could not accept compensation for speeches related to the general subjects of correction trends and reforms.[3]

This broader reading of the Civil Service Commission regulation finds additional support in the more general prohibition in section 201(c)(1) of Executive Order No. 11222 against engaging in any activity "which might result in, or create the appearance of . . . using public office for private gain." This restriction also appears in Civil Service Commission and agency regulations implementing the Executive order. See, e.g., 5 CFR 735.201a(a). In fact, where a high-level official receives compensation for speaking or writing related to his official responsibilities, a significant question of "appearances" may be raised under the general prohibition just quoted, even if the official is not covered by a regulation expressly barring the receipt of compensation for

---

[3]On the other hand, we have advised lower-level employees of the Department that they may receive compensation for teaching and writing in the area of law for which they have responsibility. We believe this more liberal policy for lower-level personnel is warranted because their services are not usually sought in order to ascertain the position of the Department on key policy issues; they are not authorized to state that position, and their activities are therefore not likely to be attractive to the anticipated audience because of their affiliation with the Department.

speaking or writing "devoted substantially to the responsibilities, programs, or operations of his agency."

As a convenient rule of thumb for determining when an outside activity such as writing is sufficiently related to official duties so as to suggest that the receipt of compensation may be improper, reference may be made to a Department of Commerce regulation prohibiting the receipt of compensation for an activity where there is reason to believe that the invitation to do so was extended partly because of the official position of the employee concerned. 15 CFR 0.735-12(b)(3). We emphasize, however, that the application of pertinent regulations in a specific instance is initially a matter for the ethics counselor of the agency involved, with the advice of the Civil Service Commission, which has responsibility for implementing Executive Order No. 11222.

The legality and propriety of a Presidential appointee receiving compensation for a book or article is governed by somewhat different considerations when the subject matter has no relation to the individual's official duties and responsibilities. It is possible that in a given case the author might be relying on his visibility in office to generate interest in a book or article about his prior experiences or other matters—or seem to be doing so—and thereby create the appearance of using public office for private gain. This would depend, of course, on the particular facts in the specific case.

Where acceptance is proper, the amount of compensation received is limited by the honorarium statute, 2 U.S.C. § 441i, to $2,000 per article or appearance, and a total of $25,000 in a calendar year.[4] It should be noted, however, that this $2,000 ceiling does not include reimbursement for expenses in connection with the writing or appearance, and the overall ceiling has not been construed to apply to the writing of books, as opposed to newspaper or magazine articles. *See* Election Law Guidebook, Sen. Doc. No. 216, 94th Cong., 2d sess. 6 (1976). Also, in preparing a book or article, the official would be required to abide by pertinent regulations and other restrictions limiting the use of Government property, personnel, appropriated funds, and nonpublic information for officially approved purposes, and not for private purposes. *See, e.g.,* Executive Order No. 11222, §§ 202, 204, and 205; 5 CFR 735.203, 205, and 206.

---

[4]It might be suggested that the $2,000 ceiling imposed by 2 U.S.C. § 441i on the amount of honoraria a Government official may receive indicates that honoraria of less than $2,000 are not unlawful under any circumstances as long as the overall ceiling of $25,000 is not exceeded. We are not aware of any suggestion in the legislative history that Congress intended to preempt all other restrictions on the receipt of compensation, and we would be most reluctant to construe it to do so in view of Congress' heightened concern in other contexts regarding the receipt of gifts and outside income by officials of the executive and legislative branches. The provision instead appears to impose an *additional* restriction on the amount of honoraria an official may receive, perhaps because the amount of an honorarium often has little relation to the personal effort of the Government official and therefore represents easy means by which a top-level Government official may supplement his income.

## II. Uncompensated Activities

Outside activities for which an individual will not be compensated create less of a conflict of interest problem. Of course, the individual would have to abide by restrictions just mentioned prohibiting the use of agency property, personnel, and appropriated funds for personal or other nongovernmental purposes. Regulations also prohibit a Government official, "for the purpose of furthering a private interest," from using or allowing the use of official information obtained through or in connection with his Government employment which has not been made available to the general public. 5 CFR 735.206. Thus, while a Presidential appointee could appropriately release theretofore nonpublic information in an official speech or paper, it would appear that he could not do so in a private publication where the primary purpose was to benefit a private interest rather than to release agency views in an acceptable forum.

Finally, we have interpreted the Justice Department regulation prohibiting activities that create the appearance of using public office for private gain to apply even where the private gain will be realized by a person or organization other than the Government official. This suggests that Department of Justice employees, including Presidential appointees, should avoid lending their official position to support the financial causes of private organizations—through speeches, the writing of articles, or in some other fashion. It may be that comparable regulations of other agencies would be construed in the same fashion.

Our observations on this subject have necessarily been general. These activities are generally governed by Executive Order No. 11222 and implementing Civil Service Commission and agency regulations, as to which we are not in a position to give an authoritative construction. In a given case, it would be advisable for the Presidential appointee to review the regulations of the particular agency involved and to consult the ethics counselor of this agency, especially where prior approval may be required.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
